# Sixth District Court of Appeal
## State of Florida

_____

Case No. 6D23-1415
Lower Tribunal No. 2018-DR-011064-O

_____

Louis Roman Orosco,

Appellant,

v.

Miguel A. Rodriguez and Brittany Nicole Diehl,

Appellees.

_____

Appeal from the Circuit Court for Orange County.
Diana M. Tennis, Judge.

December 15, 2023

STARGEL, J.

Appellant, Louis Orosco, appeals the Final Judgment of Paternity adjudicating Miguel Rodriguez, Appellee, to be the legal father of the minor child, M.A.R., and denying the counterpetition filed jointly by Orosco and Brittany Diehl, the mother.[1] We conclude that because a paternity test revealed Rodriguez was not M.A.R.'s

_____

[1] This case was transferred from the Fifth District Court of Appeal to this Court on January 1, 2023.

biological father, he lacked standing to challenge the presumption of legitimacy created by Orosco's marriage to Diehl. Consequently, we reverse.

**Background**

Orosco married Diehl in 2008. Diehl conceived a child in late 2012, and M.A.R. was born in 2013. At the time of conception, Diehl and Orosco had been separated for several years with Orosco living out of state; yet, neither one had filed for divorce. During one of Orosco's trips to Florida to visit with Diehl's older child, he and Diehl engaged in sexual intercourse. At that time, Diehl was also in a casual, sexual relationship with Rodriguez, and Rodriguez was unaware of Diehl's "one-night stand" with Orosco. Once she determined she was pregnant, Diehl informed Rodriguez he was the father of the child. Diehl told Orosco that he was not the father, and he believed her because he and Diehl had engaged in unprotected sex during the course of their marriage without conceiving a child. Orosco also believed he was divorced from Diehl as he executed "divorce papers" upon her request and delivered them to her sometime prior to 2013, but he was unaware Diehl did not initiate divorce proceedings. Rodriguez mistakenly believed that Diehl and Orosco were divorced as well. At the time of birth, Rodriguez signed M.A.R.'s birth certificate and acknowledged paternity. Diehl indicated on the birth certificate application that she was a single woman even though she was still married to Orosco.

At some point, the relationship between Diehl and Rodriguez broke down, and Rodriguez filed a Petition to Determine Paternity on or about August 22, 2018.

2

A paternity test was conducted shortly thereafter, and the results ruled out Rodriguez as the father of M.A.R. Subsequently, Diehl filed a Motion for Joinder of Indispensable Party seeking to add Orosco as a party respondent, claiming she was married to Orosco at the time of conception and the birth of M.A.R. and that he is the legal father. A joint Counterpetition to Determine Paternity and for Related Relief was filed by Diehl and Orosco after a paternity test was conducted and confirmed Orosco as the biological father of M.A.R. Following a trial in the matter, the lower court found there were competing presumptions, and the best interests of the child would be served by establishing paternity in favor of Rodriguez under section 742.10, Florida Statutes (2018). As such, a final judgment was entered finding Rodriguez is M.A.R.'s legal father, and Diehl and Orosco's counterpetition was denied. This appeal follows.

## Analysis

Whether Rodriguez has standing to challenge paternity is reviewed under the de novo standard. *See Ransom v. Grant-Van Brocklin*, 326 So. 3d 164, 166 (Fla. 3d DCA 2021) ("Standing is a pure question of law and therefore must be reviewed de novo." (citing *Sanchez v. Century Everglades, LLC*, 946 So. 2d 563, 564 (Fla. 3d DCA 2006))). Further, a trial court's interpretation and application of a statute is

3

reviewed de novo. *McGovern v. Clark*, 298 So. 3d 1244, 1248 (Fla. 5th DCA 2020) (citing *B.Y. v. Dep't of Child. & Fams.*, 887 So. 2d 1253, 1255 (Fla. 2004)).

The trial court found there were competing presumptions of paternity—a presumption in favor of Rodriguez pursuant to section 742.10, and a common law presumption of legitimacy in favor of Orosco as a result of his continuing marriage to Diehl. Finding that Rodriguez was the only meaningful father the child has ever known, the trial court determined that the best interests of the child would be served by establishing him as the child's legal father.

Section 742.10, titled "Establishment of paternity for children born out of wedlock," reads, in pertinent part as follows:

> If an adjudicatory proceeding was not held, a notarized voluntary acknowledgment of paternity or voluntary acknowledgment of paternity, which is witnessed by two individuals and signed under penalty of perjury as specified by s. 92.525(2), creates a *rebuttable* presumption, as defined by s. 90.304, of paternity and is subject to the right of any signatory to rescind the acknowledgment within 60 days after the date the acknowledgment was signed or the date of an administrative or judicial proceeding relating to the child, including a proceeding to establish a support order, in which the signatory is a party, whichever is earlier.
>
> . . . .
>
> After the 60-day period referred to in subsection (1), a signed voluntary acknowledgment of paternity shall constitute an establishment of paternity and may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger, and under which the legal responsibilities,

4

including child support obligations of any signatory arising from the acknowledgment may not be suspended during the challenge, except upon a finding of good cause by the court.

§ 742.10(1), (4) (emphasis added). Although Rodriguez signed the birth certificate and voluntarily acknowledged paternity at the time the child was born in 2013, Diehl was still married to Orosco. A statute must be given its plain and ordinary meaning when its language is clear and unambiguous. *Maloy v. Seminole Cnty.,* 264 So. 3d 370, 372 (Fla. 5th DCA 2019). The first sentence of section 742.10 states "this chapter provides the primary jurisdiction and procedures for the determination of paternity for children *born out of wedlock*." (emphasis added). M.A.R. was not born out of wedlock.[2]

Even though it was undisputed that Orosco and Diehl were still married, the trial court found that the marriage between Diehl and Orosco was "the least intact marriage possible, short of filing for a divorce." However, section 742.10 does not carve out an exception that would apply to children born during a damaged or failing marriage. Simply put, "[a]n intact marriage has been described as 'the existence of a marriage without the pendency of divorce proceedings.'" *Nevitt v. Bonomo*, 53 So.

_____

[2] Section 382.013(2)(a), Florida Statutes, requires "the name of the husband shall be entered on the birth certificate as the father of the child, unless paternity has been determined otherwise by a court of competent jurisdiction." This was not done because Diehl, either fraudulently or mistakenly, represented herself on the birth certificate application as a single woman. While the trial court found Diehl fraudulently represented herself as a single woman, whether it was a mistake or fraud does not change the analysis here.

5

3d 1078, 1082 (Fla. 1st DCA 2010) (quoting *Lander v. Smith*, 906 So. 2d 1130, 1134 (Fla. 4th DCA 2005)). There were no divorce proceedings pending between Diehl and Orosco at that time; therefore the marriage was intact. Although both Orosco and Rodriguez may have believed Diehl was divorced from Orosco, the fact remains that she was not. As such, section 742.10 is inapplicable, and a presumption of legitimacy exists as a result of Orosco and Diehl's marriage.

Still, a child's *biological* father has standing to rebut the presumption of legitimacy when he has manifested a substantial and continuing concern for the welfare of the child, and the presumption is overcome when there is a clear and compelling reason based primarily on the child's best interests. *Simmonds v. Perkins*, 247 So. 3d 397, 398 (Fla. 2018); *see also Kendrick v. Everheart*, 390 So. 2d 53, 61 (Fla. 1980). The distinction here is that Rodriguez is not M.A.R.'s biological father; consequently, there is no established pathway for him to make a claim for paternity. *See, e.g.*, *Russell v. Pasik*, 178 So. 3d 55, 59-61 (Fla. 2d DCA 2015) ("[T]hose who claim parentage on some basis other than biology or legal status do not have the same rights, including the right to visitation, as the biological or legal parents. . . . [I]f the definition of a parent is to be expanded to fit facts such as those in this appeal . . . then a policy change of this magnitude must be instituted by the legislature, not the courts."); *Kazmierazak v. Query*, 736 So. 2d 106, 110 (Fla. 4th DCA 1999) (holding that a "psychological parent" did not have standing to seek judicial intervention for custody or visitation).

Orosco, as the mother's husband, was established as the child's legal father without the need for any adjudication of the fact of fatherhood. *See Simmonds*, 247 So. 3d at 402 ("Indeed, the presumption [of legitimacy] still serves at least one important function that it served at common law: giving children born to intact marriages legal fathers without the need for any adjudication of the fact of fatherhood." (citing *G.F.C. v. S.G.*, 686 So. 2d 1382, 1384-85 (Fla. 5th DCA 1997))). Pursuant to section 742.12(4), in any proceeding to establish paternity, "[i]f the test results show the alleged father cannot be the biological father, the case shall be dismissed with prejudice." After being ruled out as the biological father of M.A.R., Rodriguez no longer had standing to pursue this paternity action and the case should have been dismissed with prejudice. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

SMITH and BROWNLEE, JJ., concur.


Andrew T. Windle, of The Windle Family Law Firm, P.A., Orlando, for Appellant.

Joy R. Knight, of The Joy Law Firm, LLC, Winter Park, for Appellee, Miguel A. Rodriguez.

No Appearance for Appellee, Brittany Nicole Diehl.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF FILED